1
2
3
4               UNITED STATES  DISTRICT COURT
5                  Northern District of California
6

7   PAUL E. ROSENFELD,
                                              No. C 09-6070 MEJ
8                      Plaintiff,
                                              **ORDER RE DEFENDANTS' MOTION**
9        v.                                   **TO DISMISS PLAINTIFF'S FIRST**
                                              **AMENDED COMPLAINT**
    JPMORGAN CHASE BANK, N.A., *et al.*,
10
                      Defendants.             **(DKT. #10)**
11   _____/

12                        **I.  INTRODUCTION**

13        Before the Court is Defendants JPMorgan Chase Bank, N.A. ("Chase"), California

14   Reconveyance Company ("CRC"), and Bank of America, N.A.'s[1] ("BofA") (collectively

15   "Defendants") motion to dismiss Plaintiff's First Amended Complaint.  (Dkt. #10.)  After

16   consideration of the parties' papers, relevant legal authority, and good cause appearing, the Court

17   ORDERS as follows.

18                        **II.  BACKGROUND**

19        In late July 2006, Plaintiff Paul E. Rosenfeld ("Plaintiff") obtained a mortgage loan in the

20   amount of $987,000.00 ("first loan") in connection with the property located at 2811 Monte Cresta

21   Drive, in Belmont, California ("the Subject Property").  (Defs.' Mot. 1:17-18, Dkt. #10; Pl.'s Opp'n

22   3:16-17, Dkt. #13.)  The first loan was secured by a Deed of Trust ("first DOT") recorded on July

23   27, 2006 with the San Mateo County Recorder's Office as instrument number 2006-112029.

24   (Request for Judicial Notice ("RJN"), Ex. 1, Dkt. #11.)  The first DOT of trust identifies Washington

25   Mutual Bank ("WaMu") as the lender, CRC as the trustee, and Plaintiff as the borrower.  *Id.*

26

27   _____

28        [1]BofA is the successor by merger to LaSalle Bank as trustee for WaMu Mortgage Pass-
     Through Certificates Series 2006-AR11 Trust and was erroneously sued as two entities: BofA and
     WaMu Mortgage Pass-Through Certificates Series 2006-AR11 Trust.  (Defs.' Mot. 1:5-6, Dkt. #10.)

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Attached to the first DOT is an Adjustable Rate Rider, signed by Plaintiff and identified on page two

2   of the first DOT, which provides that the yearly interest rate on unpaid may change monthly,

3   beginning September 2006.  (RJN, Ex. 1, Dkt. #11.)  Plaintiff also obtained a home equity line of

4   credit in connection to the Subject Property in the amount of $281.999.00, secured by a second Deed

5   of Trust ("second DOT") recorded on July 27, 2006 with the San Mateo County Recorder's Office

6   as instrument number 2006-112030.  (RJN, Ex. 2, Dkt. #11.)  The second DOT identifies WaMu as

7   the beneficiary and Plaintiff as the trustor.  *Id.*

8       On September 25, 2008, the Office of Thrift Supervision closed WaMu and appointed the

9   FDIC as receiver.  (Defs.' Mot. 2:6-7, Dkt. #10.)  On the same date, Chase entered into a Purchase

10  and Assumption Agreement ("Agreement") with the Federal Deposit Insurance Corporation

11  ("FDIC") acting in its corporate capacity as well as receiver for WaMu.  *Id.* at 2:7-9; RJN, Ex. 5,

12  Dkt. #11.  Under Section 2.5 of the Agreement, Chase did not assume liability for borrower claims

13  related to loans or commitments to lend made by WaMu.  (RJN, Ex. 5, Dkt. #11.)

14      Plaintiff states that he began to experience severe financial problems in January 2009,

15  making it difficult to pay on the first DOT.  (First Am. Compl. ("FAC") ¶ 23, Dkt. #8.)  Plaintiff

16  states that he contacted Chase to seek a modification of his loan, and that Chase advised him to be

17  late on his payments to qualify for a modification.  *Id.*  Plaintiff states that he stopped making loan

18  payments in April 2009 and submitted loan modification paperwork.  *Id.*  Plaintiff claims that he

19  repeatedly phoned Chase, resubmitted his paperwork in July, and was finally told by "Charmeka" at

20  Chase on August 26, 2009, that all of Plaintiff's documentation had been received and a

21  representative had been assigned to work on his modification.  *Id.*

22      On August 19, 2009, the first DOT was assigned by Chase to BofA and was recorded on

23  August 20, 2009 with the San Mateo County Recorder's Office as instrument number 2009-112228.

24  (RJN, Ex. 3, Dkt. #11.)  On August 20, 2009, CRC, as trustee of the first DOT, recorded a Notice of

25  Default ("NOD") with the San Mateo County Recorder's Office as instrument number 2009-112229.

26  (RJN, Ex. 4, Dkt. #11.)  Plaintiff alleges that Chase did not contact him to discuss options to pay the

27  loan prior to issuing the NOD.  *Id.* at ¶27.

28

2

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

On September 8, 2009, Plaintiff contacted "Alex" at Chase and told him he received the NOD.  (FAC ¶ 25, Dkt. #8.)  Plaintiff states that Alex told him "not to worry" and requested additional documents, which Plaintiff provided.  *Id.*  Plaintiff contacted Chase again in Ocotber of 2009, only to be informed that he had to resubmit all of his information.  *Id.*  Plaintiff resubmitted his information and now alleges that Chase has failed to contact him or make any progress on his loan modification application.  *Id.*  In the meantime, Plaintiff had also filed for bankruptcy.  *Id.*

On December 30, 2009, Plaintiff filed his initial Complaint in this matter, and subsequently filed his FAC on April 12, 2010 alleging twelve causes of action: Wrongful Foreclosure; Rescission and Restitution under 15 U.S.C. § 1635; Reformation under California Civil Code sections 3399 and 1670.5; violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq.*; Breach of Contract and Implied Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty; Fraudulent Misrepresentation; Fraudulent Concealment; Civil Conspiracy to Defraud; violation of California Business and Professions Code section 17200, *et seq.*; Quiet Title to Real Property; and for Declaratory and Injunctive Relief.  (Dkt. #8.)

On April 29, 2010, Defendants filed their motion to dismiss Plaintiff's FAC.  (Dkt. #10.)  On May 20, 2010, Plaintiff filed his opposition (Dkt. #13), and on May 27, 2010, Defendants filed their reply (Dkt. #14).  On June 10, 2010, the Court held a hearing on the matter, at which Plaintiff failed to appear.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In order to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true.  *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  The plaintiff's complaint need not contain detailed factual allegations, but it must contain more than a "formulaic recitation of the elements of a

3

1    cause of action." *Twombly*, 550 U.S. at 555.  In reviewing a motion to dismiss, courts may also

2    consider documents attached to the complaint.  *Parks School of Business, Inc. v. Symington*, 51 F.3d

3    1480, 1484 (9th Cir. 1995) (citation omitted).  In addition, courts may consider a matter that is

4    properly the subject of judicial notice, such as matters of public record.  *Lee v. City of Los Angeles*,

5    250 F.3d 668, 688 (9th Cir. 2001).

6        In determining whether to dismiss a complaint that alleges time-barred activity, it must

7    appear from the complaint that the plaintiff can prove no set of facts that would establish the

8    timeliness of a claim.  *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th Cir. 1995).  If the

9    court dismisses the complaint, it "should grant leave to amend even if no request to amend the

10   pleading was made, unless it determines that the pleading could not possibly be cured by the

11   allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

12                          **V.  APPLICATION TO THE CASE AT BAR**

13   **A.    Defendants' Request for Judicial Notice**

14       As a preliminary matter, on April 29, 2010, Defendants filed a Request for Judicial Notice,

15   (Dkt. #11), asking the Court to take notice of the following: (1) a copy of the DOT for Plaintiff's

16   property recorded on July 27, 2006 with the San Mateo County Recorder's Office as instrument

17   number 2006-112029; (2) a copy of the second DOT for Plaintiff's property recorded on July 27,

18   2006 with the San Mateo County Recorder's Office as instrument number 2006-112030; (3) the

19   Assignment of DOT recorded on August 20, 2009 with the San Mateo County Recorder's Office as

20   instrument number 2009-112228; (4) a copy of the Notice of Default ("NOD") recorded August 20,

21   2009 with the San Mateo County Recorder's Office as instrument number 2009-112229; and (5) the

22   Purchase and Assumption Agreement entered into by Chase and the FDIC, acting as receiver of

23   WaMu.  (RJN 1:28-2:13, Dkt. #11.)

24       Federal Rule of Evidence 201(b) provides the criteria for judicially noticed facts: "A

25   judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally

26   known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

27   determination by resort to sources whose accuracy cannot reasonably be questioned."  As the

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

4

documents in question are matters of public record, the Court GRANTS Defendants' request for judicial notice. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (A court may take judicial notice of matters of public record outside the pleadings on a motion to dismiss.); *W. Fed. Sav. v. Heflin*, 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents in a county public record, including deeds of trust).

**B.      Whether Plaintiff's Claims are Properly Brought Against Defendant Chase**

Defendants maintain that Plaintiff cannot state any claims against Chase, arguing that under Section 2.5 of the Agreement, Chase did not assume liability for borrower claims related to loans or commitments to lend made by WaMu. (Defs.' Mot. 2:5-6, Dkt. #10.)  Defendants state that the FDIC, not Chase, is the proper party. *Id.* at 3:5-7.  In response, Plaintiff claims that Chase is liable for claims against WaMu because under the Agreement, it agreed to assume all of WaMu's liabilities. (Pl.'s Opp'n 11:24-28, Dkt. #13.)

As stated above, on September 25, 2008, Chase acquired certain assets and liabilities of WaMu from the FDIC, which was acting as receiver for WaMu. (Defs.' Mot. 1:27-28, Dkt. #10; RJN, Ex. 5, Dkt. #11.)  Pursuant to the Agreement entered into by Chase and the FDIC, Chase acquired WaMu's interest in WaMu's loans to Plaintiff. (Defs.' Mot 1:28-2:2, Dkt. #10.)  The applicable sections of the Agreement can be found in Article II – Assumption of Liabilities. (RJN, Ex. 5, Dkt. #11.)  Section 2.1, titled "Liabilities Assumed by Assuming Bank"[2], states: "Subject to Sections 2.5 and 4.8, the Assuming Bank expressly assumes at Book Value . . . and agrees to pay, perform, and discharge, all of the liabilities of the Failed Bank which are reflected on the Books and Record of the Failed Bank . . . ."  *Id.*  Section 2.5 is titled "Borrower Claims" and provides:

> Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower . . . . related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

---

[2]Per the Agreement, Chase is referred to as the "Assuming Bank" and WaMu is referred to as the "Failed Bank." (RJN, Ex. 5, Dkt. #11.)

5

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Although Plaintiff argues that the Agreement transfers WaMu's liabilities to Chase, this issue

2   has already been presented and resolved in this district.  In *Hilton v. Washington Mutual Bank*, C 09-

3   1191 SI, the Honorable Susan Illston reviewed the same provisions in a similar lawsuit involving the

4   transfer of WaMu assets to Chase, holding that Section 2.5 "expressly provides that [Chase] did not

5   assume the potential liabilities of [WaMu] associated with claims of borrowers . . . ." (*Order*, 4:5-7,

6   Dkt. #81.)  Judge Illston thus found that the plaintiff could not maintain any claims against [Chase]

7   arising out of the origination of the loans." *Id.* at fn. 5.

8    The Court finds that the same is true in this case - the FDIC is the appropriate party

9   regarding "any liability associated with borrower claims for payment of or any liability to any

10   borrower for monetary relief, or that provide for any other form of relief to any borrower."

11   *Yeomalakis v. FDIC*, 562 F.3d 56, 60 (1st Cir. 2009).  Thus the FDIC was and remains the

12   appropriate party in interest. *See* 12 U.S.C. § 1821(d)(2)(A)(i); *see also In re Community Bank of N.*

13   *Virginia*, 418 F.3d 277, 293 n.6 (3d Cir. 2005).  Accordingly, Plaintiff has failed to state a claim

14   against Defendant Chase and the Court GRANTS Defendants' motion to dismiss Plaintiff's claims

15   against Chase.

16   **C.    Plaintiff's Claims**

17    Defendants next move to dismiss Plaintiff's FAC in its entirety, arguing that each cause of

18   action fails to state a claim upon which relief can be granted.  (Defs.' Mot. 2:3-3:10, Dkt. #10.)  In

19   response, Plaintiff contends that he has sufficiently pled that relief "can be granted on almost every

20   cause of action addressed" in Defendants' motion, and argues that the motion should be denied in its

21   entirety.  (Pl.'s Opp'n 3:3-6, Dkt. #13.)  The Court shall address each claim in turn.

22    1.    Wrongful Foreclosure

23    Plaintiff's first cause of action is for wrongful foreclosure.  However, Plaintiff does not

24   allege that a foreclosure has occurred; instead, he alleges that under California Civil Code sections

25   2923.5 and 2924, no named defendant has the lawful right to foreclose on the Subject Property.

26   (FAC ¶¶ 32, 33, Dkt. #8.)

27    In their motion to dismiss, Defendants argue that Plaintiff's wrongful foreclosure claim fails

28

6

for one basic reason – there was no foreclosure sale of the Subject Property.  (Defs.' Mot. 4:14-15; Dkt. #10.)  A lender or foreclosure trustee may only be liable to the mortgagor or trustor for wrongful foreclosure if the property was fraudulently or illegally sold under a power of sale contained in a mortgage or deed of trust.  *Munger v. Munger*, 11 Cal. App. 3d 1, 7 (1970).  Here, there is no dispute that a foreclosure sale did not take place.  *See* RJN, Exhibits 1-4.  Accordingly, the Court finds that this cause of action is premature.

In their motion, Defendants also argue that, even had a foreclosure sale taken place, they fully complied with California Civil Code section 2923.5 and 2924.  (Defs.' Mot. 4:25-5:22; Dkt. #10.)  In response, Plaintiff contends that Defendants failed to comply with California Civil Code section 2924 because CRC did not have the authority to record the NOD.  (Pl.'s Opp'n 6:1-20, Dkt. #13.)  As noted above, Plaintiff does not dispute that there has been no sale of the Subject Property.  However, accepting the allegations in Plaintiff's FAC as true, the Court shall address Plaintiff's statutory claims.

        *a.*        *California Civil Code section 2923.5*

Even if there had been a foreclosure, the Court finds that Defendants complied with their obligations under the California Civil Code.  California Civil Code section 2923.5(a)(1) provides that "a mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) . . . ," which requires that:

> A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

Cal. Civ. Code § 2923.5(2).  Furthermore, "a notice of default filed pursuant to Section 2924 shall include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the

7

1   borrower, [or] has tried with due diligence to contact the borrower as required by this section . . . ."

2   Cal. Civ. Code § 2923.5(b).

3       In his FAC, Plaintiff alleges that each Defendant failed to comply with its obligations under

4   section 2923.5 by their failure and refusal to: (1) evaluate Plaintiff's financial condition regarding

5   foreclosure avoidance; (2) advise Plaintiff of his right to meet with Defendants to discuss

6   foreclosure avoidance; and (3) advise Plaintiff of the toll-free number to call for counseling

7   opportunities.  (FAC ¶ 36, Dkt. #8.)  Plaintiff alleges that as a result of Defendants' failure to

8   comply, he "suffered compensable damages according to proof."  *Id.* at ¶ 6.

9       In their motion to dismiss, Defendants contend that section 2923.5 only requires that the

10  beneficiary, here CRC, include a declaration in the notice of sale that the borrower was contacted to

11  assess his or her financial situation, and that the NOD contained a declaration to that effect.  (Defs.'

12  Mot. 4:26-5:8, Dkt. #10.)  Defendants maintain that the fact that Plaintiff's conversations with Chase

13  did not result in successful loan modification prior to his filing for bankruptcy does not mean that

14  Defendants failed to comply with the required assessment of Plaintiff's financial situation as

15  contemplated in section 2923.5.  *Id.* at 5:11-14.

16      In reviewing the allegations in Plaintiff's FAC, the Court notes that he did contact Chase

17  beginning in January 2009, when he sought a modification of his loan.  (FAC ¶ 23, Dkt. #8.)

18  According to Plaintiff, he stopped making loan payments in April 2009 based on advice he received

19  from Chase, and then submitted loan modification paperwork.  *Id.*  Plaintiff claims that he had

20  repeated phone conversations with Chase representatives and was told that a representative had been

21  assigned to work on his modification, but that Chase failed to subsequently contact him to discuss

22  options.  *Id.*  However, the Court finds that section 2923.5 does not require Chase to do more.  *See*

23  *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1166 (S.D. Cal. 2009) (finding an

24  implication that the plaintiffs were contacted as required by section 2923.5 and finding dismissal

25  appropriate where the plaintiffs alleged that the defendant did not explore alternatives to foreclosure,

26  but did not allege that the defendants failed to contact them, coupled with the defendant's

27  declaration of compliance.)  Perhaps recognizing that he has no claim, Plaintiff states in his

28

1  opposition that he "concedes that he did have discussions regarding the three separate unsuccessful

2  modifications, but . . . still alleges that Defendants' [sic] failed to comply with Civil Code section

3  2924." (Pl.'s Opp'n 6:2-4, Dkt. #13.)

4       Here, the NOD states that "[t]he beneficiary or its designated agent declares that it has

5  contacted the borrower, tried with due diligence to contact the borrower as required by California

6  Civil Code section 2923.5 . . . or is otherwise exempt from the requirements of §2923.5." (RJN, Ex.

7  3, Dkt. #11.) The Court finds that this notice complies with section 2923.5 and, as Plaintiff does not

8  contest that Defendants complied with section 2923.5, Plaintiff's claim must fail.

9            b.       California Civil Code section 2924

10      Section 2924 provides that in order to institute foreclosure proceedings where a borrower has

11  defaulted on a loan, "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents shall

12  first file for record, in the office of the recorder of each county wherein the mortgaged or trust

13  property or some part or parcel thereof is situated, a notice of default." Cal. Civ. Code § 2924(a)(1).

14  The NOD must identify the deed of trust, provide the instrument number under which it was

15  recorded, identify the breach which has occurred, and notify the trustor of the intent to sell. *Id.*

16      Plaintiff alleges that "there have been numerous improprieties in the assignment, transfer and

17  exercise of the power of sale contained in the [DOT], and thus that CRC "is not properly appointed

18  or authorized by the true beneficiary to foreclose" on the Subject Property. (FAC ¶ 33, Dkt. #8.) In

19  their motion to dismiss, Defendants contend that CRC, as the beneficiary under the DOT, was

20  entitled to execute the NOD. (Defs.' Mot. 6:9-11, Dkt. #10.)

21      Where a deed of trust contains a power-of-sale clause, the beneficiary may pursue non-

22  judicial foreclosure, commonly referred to as a trustee's sale, under section 2924. *Ung v. Koehler*,

23  135 Cal. App. 4th 186, 192 (2005). Here, the power-of-sale clause is included on page three of the

24  first DOT, which provides that "Borrower irrevocably grants and conveys to Trustee, in trust, with

25  power of sale, the [P]roperty . . . ." (RJN, Ex. 1, Dkt. #11.) Further, the NOD complies with section

26  2924; it identifies CRC as Trustee, provides the instrument number under which the first DOT was

27  recorded, informs Plaintiff of the amount for which he is in arrears, and further notifies him of the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    election to sell under the first DOT.  (RJN Ex. 4, Dkt. #11.)  Thus, the Court finds that CRC

2    complied with section 2924.

3          Further, the Court finds no merit to Plaintiff's argument that there were improprieties in the

4    assignment of the power-of-sale clause in the first DOT.  In support of his claim, Plaintiff argues

5    that there is no record of an assignment of the beneficial interest from WaMu/Chase.  (Pl.'s Opp'n

6    6:13-15, Dkt. #13.)  However, the first DOT identifies WaMu as lender and beneficiary, and CRC as

7    the Trustee under the instrument.  (RJN, Ex. 1, Dkt. #11.)  Under the Agreement, Chase acquired

8    certain assets and liabilities of WaMu from the FDIC, which was acting as receiver for WaMu.

9    (RJN, Ex. 5, Dkt. #11.)  BofA was assigned beneficial interest in the first DOT by Chase as

10   evidenced by the Assignment of DOT.  (RJN, Ex. 3, Dkt. #11.)  Thus, CRC, the Trustee under the

11   first DOT, acted as the authorized agent of BofA when it recorded the NOD, in compliance with

12   section 2924(a)(1).

13         Based on this analysis, the Court finds that Plaintiff has failed to state a claim upon which

14   relief can be granted as to his wrongful foreclosure allegation.  Further, Plaintiff could not cure the

15   deficiencies of this claim.  Accordingly, the Court GRANTS Defendants' motion to dismiss

16   Plaintiff's first cause of action WITHOUT LEAVE TO AMEND.

17         2.    Plaintiff's Second Cause of Action – Rescission Under 15 U.S.C. § 1635

18         In his FAC, Plaintiff states that he has rescinded his loan on the Subject Property by

19   providing Chase with a written notice of cancellation on December 18, 2009.  (FAC ¶ 39, Dkt. #8.)

20   Plaintiff alleges that Defendants have failed to acknowledge Plaintiff's notice of cancellation and

21   have taken no action to remove the security interest on the Subject Property or to return the monies

22   due to him.  Id. at ¶¶ 40, 41.

23         In their motion to dismiss, Defendants contend that Plaintiff's claim for rescission is time-

24   barred by the applicable statute of limitations.  (Defs.' Mot. 7:17-18, Dkt. #10.)  The Truth in

25   Lending Act ("TILA"), 15 U.S.C. ¶ 1601, et seq., is intended to protect consumers in credit

26   transactions by requiring "meaningful disclosure of credit terms." 15 U.S.C. § 1601(a).  A lender's

27   violation of TILA allows the borrower to seek damages or to rescind a consumer loan secured by the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    borrower's primary dwelling.  *Copeland v. Lehman Brothers Bank, FSB*, 2010 WL 2817173, at *5

2    (S.D. Cal. July 15, 2010).  However, a plaintiff's damage claims relating to improper disclosures

3    under TILA are subject to a one-year statute of limitations, 15 U.S.C. § 1640(e), which runs from the

4    time the loan transaction is consummated.  *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986);

5    *see also Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (failure to make the

6    required disclosures under TILA occurs at the time the loan documents were signed).  The right to

7    rescission under TILA expires three days after the necessary disclosures are provided to the

8    borrower.  15 U.S.C. § 1635(a).

9          In his opposition, Plaintiff concedes that he did not meet the one-year statute of limitations

10   requirement, but he argues that if a lender fails to disclose to the borrower his right to rescind, the

11   duration of the borrower's right to rescind extends for three years from the date the transaction was

12   consummated.  (Pl.'s Opp'n 10:24-11:2, Dkt. #13.)

13         Equitable tolling of TILA claims may be appropriate "in certain circumstances," and can

14   operate to "suspend the limitations period until the borrower discovers or had reasonable

15   opportunity to discover the fraud or non-disclosures that form the basis of the TILA action."  *King*,

16   784 F.2d at 914-15.  District courts have discretion to evaluate specific claims of fraudulent

17   concealment and equitable tolling and "to adjust the limitations period accordingly."  *Id.* at 915.

18   Because the applicability of the equitable tolling doctrine often depends on matters outside the

19   pleadings, it "is not generally amenable to resolution on a Rule 12(b)(6) motion."  *Supermail Cargo*,

20   68 F.3d at 1206.  However, when a plaintiff fails to allege facts demonstrating that he could not have

21   discovered the alleged violations by exercising reasonable diligence, dismissal is appropriate.

22   *Meyer*, 342 F.3d at 902-03 (refusing to apply equitable tolling to TILA claim because the plaintiff

23   was in full possession of all loan documents and did not allege any concealment of loan documents

24   or other action that would have prevented discovery of the alleged TILA violations); *see also*

25   *Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (finding that plaintiff was not entitled to

26   equitable tolling of her TILA claim because "nothing prevented [plaintiff] from comparing the loan

27   contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements").

28

11

1      Here, Plaintiff vaguely states that the right to rescind is extended "if a lender fails to disclose

2    to the borrower his right to rescind," but he provides no support for how this might apply to the

3    Defendants in this case.  Instead, Plaintiff states that he submitted his request on December 16,

4    2009, in which he sought disclosure as to who was involved in the servicing of his loan, but

5    Defendants have failed to provide the requested information.  (Pl.'s Opp'n 11:3-6, Dkt. #13.)  Even

6    assuming this is true, it is unclear how failure to disclose this information establishes that

7    Defendants failed to disclose Plaintiff's right to rescind at the time he signed the agreement in 2006.

8    *See Meyer*, 342 F.3d at 902-03; *Hubbard*, 91 F.3d at 79.  Accordingly, the Court finds that Plaintiff

9    has failed to satisfy the requisite pleading standards.  *See Twombly*, 550 U.S. at 555.  As Plaintiff has

10   failed to allege sufficient facts to show that equitable tolling may be warranted, and he filed his

11   Complaint over three years after the relevant transaction, the Court hereby DISMISSES Plaintiff's

12   second cause of action WITHOUT LEAVE TO AMEND.

13        3.    Plaintiff's Third Cause of Action – Reformation

14        Plaintiff's third cause of action is for reformation under California Civil Code sections 3399

15   and 1670.5 against Defendants Chase and Capital Market Funding.  (FAC ¶¶ 43-52, Dkt. #8.)

16   Specifically, Plaintiff alleges that the written loan agreement fails to reflect the true intent of parties

17   because he believed, based on representations made to him, that his mortgage rate was fixed at 1%,

18   while the written agreement provides for an adjustable rate mortgage.  Plaintiff seeks reformation of

19   the written loan agreement to reflect what he alleges was the true intent of the parties - a thirty-year

20   fixed mortgage at a 1% fixed rate.  As discussed above, any claim related to the loan origination is

21   not properly brought against Chase.  Accordingly, the Court shall consider this claim solely as it

22   relates Defendant Capital Market Funding ("CMF").[3]

23        In their motion to dismiss, Defendants argue that reformation is only proper where the

24   contract does not express the true intention of the parties due to fraud, a mutual mistake of the

25   parties, or a mistake of one party of which the other party had knowledge. (Defs.' Mot. 9:24-26,

26   _____

27        [3]CMF has not appeared in this action and therefore did not join in Defendants' present

28   motion.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Dkt. #10.)  Defendants contend that none of those situations are present here, so Plaintiff is not

2   entitled to reformation.  *Id.* at 11:6-12.

3          California Civil Code section 3399 provides that "[w]hen, through fraud or a mutual mistake

4   of the parties, or a mistake of one party, which the other at the time knew or suspected, a written

5   contract does not truly express the intention of the parties, it may be revised" to express the true

6   intention of the parties, so long as the revision does not prejudice rights acquired by third parties in

7   good faith and for value.

8          Here, the Adjustable Rate Rider attached to the first DOT, which Plaintiff executed, clearly

9   explains the terms of repayment.  (RJN, Ex. 1, Dkt. #11.)  The Rider indicates the interest rate of the

10  Loan and when the monthly mortgage payments would change.  *Id.*  Specifically, it expressly states

11  the interest rate and monthly payments, and categorizes such explanation into subheadings: "Change

12  Dates," "Calculation of Changes," "Limits of Interest Rate Changes," "Effective Date of Changes,"

13  and "Notice of Changes."  *Id.*  Further, Plaintiff has a duty to read the terms of a contract before

14  signing.  *Fields v. Blue Shield of California*, 163 Cal. App. 3d 570, 578 (1985) (general duty to read

15  binds signing party to contract unless it contains unusual or unfair language, which the preparing

16  party must explain); *see also Employee Painters' Trust v. J&B Finishes*, 77 F.3d 1188, 1192 (9th

17  Cir. 1996) (party who signs a written agreement even without reading it is bound by its terms).

18  Plaintiff has presented no evidence to support the proposition that the terms of the Adjustable Rate

19  Rider were hidden from him, that they were unusual or unfair, or harsh or one-sided, or that there

20  was any impropriety in the formation or execution of the contract.  In addition, Plaintiff presumably

21  received mortgage statements in connection with the subject loan and even admits that his loan

22  adjusted annually, yet he only sought a revision over two years later, when he began to experience

23  financial problems.  (Pl.'s Opp'n 3:24-4:2, Dkt. #13; FAC ¶ 23, Dkt. #8.)  Therefore, the Court finds

24  that Plaintiff's claim fails.

25         Plaintiff also maintains that "Defendants intended to deceive [him] into believing that the 1%

26  interest rate would be fixed for the life of the loan so they could close the deal and run off with his

27  money."  (Pl.'s Opp'n 11:15-17, Dkt. #13.)  Plaintiff states that "because of the negative

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

13

UNITED STATES DISTRICT COURT
For the Northern District of California

1   amortization, what started as a $987,000.00 loan would turn into $2,401,502.08 after all principal

2   and interest payments are made," and argues that "[n]o person in their right mind would ever agree

3   to such a contract." *Id.* at 11:20-22. Given this allegation, Plaintiff contends that reformation is

4   proper because the loan agreement was unconscionable at the time it was made. (FAC ¶50, Dkt.

5   #8.)     California Civil Code section 1670.5 provides that a court may choose not to enforce a

6   contract or a portion of a contract that it finds unconscionable. Under California law, a contract

7   provision is unenforceable if it is both procedurally and substantively unconscionable. *Shroyer v.*

8   *New Cingular Wireless Services, Inc.*, 498 F.3d 976, 981-82 (9th Cir. 2007). On California's sliding

9   scale, "the more substantively oppressive the contract term, the less evidence of procedural

10  unconscionability is required to come to the conclusion that the term is unenforceable, and vice

11  versa." *Id.* at 981 (quoting *Armendariz v. Foundation Health Psychare Services, Inc.*, 24 Cal. 4th

12  83, 114 (2000)). A contract will be considered procedurally oppressive when there is oppression or

13  surprise due to unequal bargaining power. *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160

14  (2005). A contract or term therein will be considered substantively oppressive where the results are

15  overly harsh or one-sided. *Id.*

16          In this case, Plaintiff has set forth no facts to demonstrate that Defendants engaged in any act

17  of oppression, surprise, or overly-harsh conduct in connection with the originating of the subject

18  loans. Plaintiff argues that "Defendants intended to deceive [him] into believing that the 1% interest

19  rate would be fixed for the life of the loan so they could close the deal and run off with his money."

20  (Pl.'s Opp'n 11:15-17, Dkt. #13.) However, as detailed above, the Adjustable Rate Rider attached to

21  the DOT, which Plaintiff executed, clearly explains the terms of repayment. And Plaintiff has a duty

22  to read the terms of a contract before signing. *Fields*, 163 Cal. App. 3d at 578; *see also Employee*

23  *Painters' Trust*, 77 F.3d at 1192. Accordingly, given the clear terms of the subject loan, the Court

24  finds that Plaintiff has failed to state a claim for reformation under the California Civil Code, and he

25  can not allege any facts to show otherwise. Thus, the Court GRANTS Defendants' motion to

26  dismiss Plaintiff's third cause of action WITHOUT LEAVE TO AMEND.

27  ///

28

14

UNITED STATES DISTRICT COURT
For the Northern District of California

4.      Plaintiff's Fourth Cause of Action – RESPA Violations

In his fourth cause of action, Plaintiff alleges that the subject loan is a mortgage loan under the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et seq.*, and that Defendants violated RESPA by concealing the true beneficiary of the loan and the holder in due course. (FAC ¶¶ 55-56, Dkt. #8.) Plaintiff further alleges that he submitted a qualified written request ("QWR") to Defendants to determine who is "involved in this loan and their roles," but Chase has yet to respond. *Id.* at ¶ 55. Plaintiff contends that Defendants also violated RESPA by receiving money for referrals of settlement service business related to his loan, including giving secret kickbacks to loan brokers. *Id.* at ¶ 57. Plaintiff further alleges that in return, Capital Market Funding "steered Plaintiff into loans at rates and on terms well above market rates and above those that Plaintiff could have obtained absent such practices." *Id.*

In their motion, Defendants argue that Plaintiff has not proven pecuniary loss as required by RESPA, nor has he alleged enough facts to prove a RESPA violation. (Defs.' Mot. 11:18-20, Dkt. #10.) Defendants also argue that RESPA only imposes liability upon loan servicers, and Plaintiff has not alleged that BofA or CRC are servicers of his loan. *Id.* at 13:4-7.

Under RESPA, if a borrower sends a QWR to the servicer of his loan requesting information relating to the servicing of the loan, the servicer has 20 days to acknowledge receipt of the QWR in writing. 12 U.S.C. § 2605(e)(1)(A). The QWR must enable the servicer of the loan to identify the borrower's name and account and should include a statement by the borrower identifying the reasons why he or she believes the account is in error. *Id.* at §2605(e)(1)(B). The servicer of the loan then has 60 days to either rectify the error or to communicate in writing to the borrower why the loan is not in error and must provide the borrower with the name and contact information of someone employed by the servicer who can further assist the borrower. *Id.* at §2605(e)(2). Any servicer failing to comply with the above will be liable to the borrower for his or her actual damages, and for any additional damages in an amount not to exceed $1,000 where the court finds a pattern or practice of noncompliance by the servicer. *Id.* at §2605(f)(1).

Here, Plaintiff alleges that he sent the QWR on December 16, 2009, yet he initially filed this

15

1    action on December 29, 2009 - fourteen days after the request was sent and prior to the allotted time

2    to respond had even run.  However, for purposes of Defendants' motion, the Court shall base its

3    analysis on the April 12, 2010 filing date of the FAC, thus permitting the requisite response time

4    under RESPA.  Given this date, the Court initially finds that Plaintiff has properly alleged a RESPA

5    violation because he sent a QWR and Defendants failed to respond.

6        However, alleging a breach of RESPA duties alone does not state a claim under RESPA.

7    Plaintiff must, at a minimum, also allege that the breach resulted in actual damages.  *See* 12 U.S.C. §

8    2605(f)(1)(A) ("Whoever fails to comply with this section shall be liable to the borrower . . . [for]

9    any actual damages to the borrower as a result of the failure."); *Hutchinson v. Delaware Savings*

10   *Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (citations omitted) (a claimant under 12 U.S.C. §

11   2605 must allege a pecuniary loss attributable to the alleged violation).  Here, Plaintiff alleged in his

12   FAC only that he has "suffered and continues to suffer compensable damages" as a "result of

13   Defendants' failure to comply with RESPA."  (FAC ¶ 58, Dkt. #8.)  However, he does not specify

14   his damages.  Defendants argue that Plaintiff's claim for violation of RESPA, which is based on the

15   alleged failure to respond to Plaintiff's QWR, is subject to dismissal because he failed to allege that

16   he suffered any actual damages as a result thereof.  The Court agrees.  In particular, Plaintiff has

17   failed to allege any facts in support of his conclusory allegation that Defendants are liable for

18   "compensable damages."  *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009)

19   ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

20   inapplicable to legal conclusions.").  Indeed, Plaintiff has failed to allege that he in fact suffered any

21   such damages.

22       Accordingly, to the extent Defendants seek dismissal of Plaintiffs' Fourth Cause of Action,

23   the motion is granted.  The Court, however, will afford Plaintiff an opportunity to file a Second

24   Amended Complaint curing the deficiencies noted above.  Plaintiff should also be mindful that 12

25   U.S.C. § 2605(e) specifically applies to loan servicers, defined as "the person responsible for

26   servicing of a loan" which means to "receiv[e] any scheduled periodic payments from a borrower

27   pursuant to the terms of any loan . . . ."  *Id.* at §§ (i)(2), (3).  Any amended complaint must comply

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    with the limitations imposed by 12 U.S.C. § 2605(e).

2          5.      Plaintiff's Fifth Cause of Action – Breach of the Implied Covenant of Good Faith and
                   Fair Dealing

3

4          In his next cause of action, Plaintiff alleges that the loan agreements, and more specifically

5    the promissory note and deeds of trust, contained an implied covenant of good faith and fair dealing

6    which obligated Defendants to "refrain from engaging in any conduct [that] would prevent Plaintiff

7    from fully enjoying the benefits of these contracts."  (FAC ¶ 60, Dkt. #8.)  Plaintiff further alleges

8    that Defendants breached the implied covenant of good faith and fair dealing due to their failure to

9    comply with Civil Code section 2923.5.

10         In their motion to dismiss, Defendants argue that Plaintiff has failed to demonstrate how any

11   alleged failure to comply with the above section constitutes an interference with his right to receive

12   the benefit from his loan transaction.  (Defs.' Mot. 14:9-11, Dkt. #10.)  In response to Plaintiff's

13   allegation, Defendants contend that Plaintiff has failed to meet his obligations under the loan

14   contract as required, namely, to make timely monthly payments; thus his claim must fail.  *Id.* at

15   14:27-28.

16         In his opposition, Plaintiff apparently abandons the allegation in his Complaint that

17   Defendants breach is the result of their failure to comply with section 2923.5.  Instead, Plaintiff now

18   contends that Defendants breached the implied covenant of good faith and fair dealing by initiating

19   foreclosure proceedings without complying with California Civil Code section 2924.  (Pl.'s Opp'n

20   8:1-4, Dkt. #13.)  Plaintiff also argues that the loan terms themselves, including the interest rate,

21   amount financed, and finance charges equate to a breach of the implied covenant.  *Id.* at 8:5-6.

22   Plaintiff further argues that Defendants breached the implied covenant "as to the initial loan and

23   with respect to his efforts at modification and the foreclosure process."  *Id.* at 8:14-16.

24         Under California law, every contract "imposes upon each party a duty of good faith and fair

25   dealing in its performance and its enforcement."  *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th

26   784, 796 (2008) (quoting *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 371-72

27   (1992)).  The covenant "is based on general contract law and the long-standing rule that neither

28

UNITED STATES DISTRICT COURT
For the Northern District of California

party will do anything which will injure the right of the other to receive the benefits of the agreement." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 36 (1995).  In California, the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct.  Judicial Council of California Civil Jury Instruction 325.

Here, as discussed above, Plaintiff failed to set forth any facts to support the contention that Defendants violated sections 2923.5 and 2924.  Further, the implied covenant of good faith and fair dealing  "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (2004) (internal citation omitted).  "Absent [a] contractual right . . . the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." *Waller*, 11 Cal.4th at 36 (internal citations omitted). As Plaintiff failed to plead that a contract to modify the loan agreement existed, or that the parties had a specific agreement under either of these sections, Plaintiff's claim as it relates to sections 2923.5 and 2924 must fail.

In addition, Plaintiff's claim that a breach occurred "when executing [his] initial loan in July of 2006" likewise fails.  First, as discussed above, when Chase acquired certain assets and liabilities of WaMu from the FDIC, Section 2.5 of the Agreement provided that Plaintiff could not maintain any claims against Chase arising out of the origination of the loans.  Second, even if Plaintiff could establish a contractual relationship, "no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002).  California courts do not invoke a special relationship between a lender and borrower absent special circumstances with such "fiduciary characteristics." *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006).  Here, Plaintiff's Complaint does not allege facts establishing a

18

1  "special relationship" between Plaintiff and Defendants that could justify extending tort liability.

2  Third, Plaintiff has failed to allege the second element of his claim - that he fulfilled his obligations

3  under the contract.  As such, the Court finds that Plaintiff has not stated a claim for breach of the

4  implied covenant of good faith and fair dealing.  The Court thus GRANTS Defendants' motion to

5  dismiss Plaintiff's fifth cause of action WITHOUT LEAVE TO AMEND.

6          6.    <u>Plaintiff's Sixth Cause of Action – Breach of Fiduciary Duty</u>

7        Plaintiff's sixth cause of action is for breach of fiduciary duty against Chase and CMF.  In

8  his FAC, Plaintiff alleges that CMF, his mortgage broker and financial advisor, owed him fiduciary

9  duties regarding the subject loan and that Chase knew about that fiduciary relationship.  (FAC ¶ 64,

10  Dkt. #8.)  Plaintiff further alleges that Chase owed a duty not to aid and abet CMF's breach of

11  fiduciary duty, which Plaintiff alleges occurred when CMF obtained a loan for Plaintiff with

12  unfavorable terms which served CMF, and by not disclosing that it could have obtained Plaintiff

13  more favorable terms.  *Id.* at ¶¶ 66-67.  Plaintiff alleges that Chase was at all times aware of and

14  aided and abetted in CMF's breach.  *Id.* at ¶ 67.

15        In their motion to dismiss, Defendants argue that there was no fiduciary duty between

16  Plaintiff and Chase, and thus that Plaintiff's cause of action fails.  (Defs.' Mot. 15:7-21, Dkt. #10.)

17        "In order to plead a cause of action for breach of fiduciary duty, there must be shown the

18  existence of a fiduciary relationship, its breach, and damage proximately caused by that breach.  The

19  absence of any one of these elements is fatal to the cause of action."  *Pierce v. Lyman*, 1 Cal. App.

20  4th 1093, 1101 (1991).  "[A]s a general rule, a financial institution owes no duty of care to a

21  borrower when the institution's involvement in the loan transaction does not exceed the scope of its

22  conventional role as a mere lender of money."  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231

23  Cal. App. 3d 1089, 1096 (1991).

24        Here, because Chase was not a party to the loan agreement, Plaintiff cannot show that it

25  "aided and abetted" in CMF's alleged breach of fiduciary duty.  Even if Chase were considered a

26  party to the original loan agreement, Plaintiff has not alleged that any of its actions exceeded the

27  scope of its conventional role as a lender.  Accordingly, Plaintiff's breach of fiduciary duty cause of

28

1    action must fail as to Chase.  The Court thus GRANTS Defendants' motion to dismiss Plaintiff's

2    sixth cause of action as to Chase WITHOUT LEAVE TO AMEND.

3          As to CMF, it has not appeared in this action and has therefore not joined in Defendants'

4    motion to dismiss.  Thus, accepting Plaintiff's allegations as true, his sixth cause of action for breach

5    of fiduciary duty against CMF remains.  However, there is no indication that CMF has been properly

6    served.  Accordingly, Plaintiff must ensure that any amended complaint that includes CMF as a

7    defendant is properly served on it.

8          7.    <u>Plaintiff's Seventh, Eighth and Ninth Causes of Action for Fraud-Related Damages</u>

9          Plaintiff next brings three fraud-related causes of action.  In his seventh cause of action for

10   fraudulent misrepresentation, Plaintiff alleges that Defendants knowingly made false representations

11   that the terms of the loan procured for him were the best available, that it was a fixed-rate loan, fully

12   amortized, that the payment would not increase, and that he could afford the loan.  (FAC ¶ 70-72,

13   Dkt. #8.)  Plaintiff alleges that these representations were material in his decision to accept the loan

14   terms, and that Defendants knew he would rely on their misrepresentations.  *Id.* at ¶ 71, 73-75.

15   Plaintiff maintains that Defendants committed the above acts with malice and oppression.  *Id.* at ¶

16   76.

17         In his eighth cause of action for fraudulent concealment, Plaintiff alleges that Defendants

18   concealed material facts (as stated in his seventh cause of action above) to induce him to

19   consummate the loan, and that he suffered damages as a result of their fraudulent concealment.  *Id.*

20   at ¶¶ 77-81.

21         In his ninth cause of action for civil conspiracy to defraud, Plaintiff alleges that Defendants

22   committed their acts of fraud pursuant to an agreement by and between them to "defraud [him] into

23   entering the subject loan, to pay and make secret profits from the origination, resale and servicing of

24   the subject loan, and to induce [him] to forego seeking redress for the wrongs committed until his

25   property was foreclosed upon and forever lost."  *Id.* at ¶ 85.

26         In their motion to dismiss, Defendants contend that Plaintiff cannot state any cause of action

27   for fraud because his claims are time-barred.  (Defs.' Mot. 15:25-16:9, Dkt. #10.)  Alternatively,

28

20

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Defendants argue that Plaintiff fails to allege fraud with particularity, specifically that he fails to

2   plead with particularity the representations made, how such representations were false, and under

3   whose authority such representations were made by Chase. *Id.* at 17:12-19.

4        In response, Plaintiff maintains that his fraud claims are not time-barred because he became

5   aware of the fraud within 15 days of filing his initial complaint.   (Pl.'s Opp'n 8:22-26, Dkt. #13.)

6   Additionally, he claims this his fraud allegations are pled with particularity.   Specifically, he argues

7   that Defendants represented that he could refinance his property with a 1% interest rate, they were

8   aware their statements were false, he relied on these statements, and has been damaged because he

9   has been forced to pay a rate that is over 5% greater than what was represented to him at the time of

10   the loan origination. *Id.* at 9:6-21.

11        Plaintiff's seventh, eighth, and ninth causes of action are all species of fraud.  *Lane v. Vitek*

12   *Real Estate Industries Group*, --- F. Supp. 2d ----, 2010 WL 1956707, at *8 (E.D. Cal. May 13,

13   2010).   In California, the essential elements of a claim for fraud are "(a) a misrepresentation (false

14   representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

15   defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Estate of*

16   *Young*, 160 Cal. App. 4th 62, 79 (2008) (citations omitted).   The statute of limitations  for an action

17   grounded in fraud is three years.  Cal. Civ. Code § 338(d).

18        Under the heightened pleading requirements for claims of fraud under Rule 9(b), "a party

19   must state with particularity the circumstances constituting the fraud."  Fed. R. Civ. P. 9(b).   A

20   plaintiff must include the "who, what, when, where, and how" of the fraud.  *Vess v. Ciba-Geigy*

21   *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *Decker v. Glenfed, Inc.*, 42 F.3d

22   1541, 1548 (9th Cir. 1994).   Additionally, "[w]here multiple defendants are asked to respond to

23   allegations of fraud, the complaint must inform each defendant of his alleged participation in the

24   fraud."  *Ricon v. Reconstruct Co.*, No. 09-937 IEG, 2009 WL 2407396, at *3 (S.D. Cal. Aug.4,

25   2009) (quoting *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir.1987)).

26        As it finds the issue dispositive, the Court shall first address whether Plaintiff's fraud claims

27   are time barred.  "[A]s a general rule the limitations period starts at the consummation of the

28

21

1    transaction." *King*, 784 F.2d at 915.  Here, Plaintiff entered into the loan agreements in July of

2    2006, yet he filed his initial complaint in December of 2009.  As more than three years elapsed

3    before Plaintiff brought this action, the Court initially finds that his claims are time barred.

4           Plaintiff responds that the statute of limitations should be tolled on equitable grounds

5    because he did not discover the fraud until December of 2009.  (Pl.'s Opp'n 8:22-26, Dkt. #13.)

6    "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital

7    information bearing on the existence of his claim."  *Santa Maria v. Pacific Bell*, 202 F.3d 1170,

8    1178 (9th Cir. 2000).  Equitable tolling "focuses on excusable delay by the Plaintiff."  *Id.*

9           Here, the Court finds that the alleged facts of this case are not so extraordinary as to warrant

10   equitable tolling.  Plaintiff's transaction was consummated in July of 2006.  (RJN Ex. 1-3, Dkt. #11.)

11   As discussed above, the Adjustable Rate Rider attached to the first DOT, which Plaintiff executed,

12   clearly explains the terms of repayment.  (RJN, Ex. 1, Dkt. #11.)  The Rider indicates the interest

13   rate of the Loan and when the monthly mortgage payments would change.  *Id.*  Specifically, it

14   expressly states the interest rate and monthly payments, and categorizes such explanation into

15   subheadings "Change Dates," "Calculation of Changes," "Limits of Interest Rate Changes,"

16   "Effective Date of Changes," and "Notice of Changes."  *Id.*  Further, Plaintiff has a duty to read the

17   terms of a contract before signing.  *Fields*, 163 Cal. App. 3d at 578 (general duty to read binds

18   signing party to contract unless it contains unusual or unfair language, which the preparing party

19   must explain); *see also Employee Painters' Trust*, 77 F.3d at 1192 (party who signs a written

20   agreement even without reading it is bound by its terms).  Plaintiff has presented no evidence to

21   support the proposition that the terms of the Adjustable Rate Rider were hidden from him, that they

22   were unusual or unfair, or harsh or one-sided, or that there was any impropriety in the formation or

23   execution of the contract.  In addition, Plaintiff presumably received mortgage statements in

24   connection with the subject loan and even admits that his loan adjusted annually, and he only sought

25   a revision when he began to experience financial problems.  (Pl.'s Opp'n 3:24-4:8, Dkt. #13; FAC ¶

26   23, Dkt. #8.)

27          Further, Plaintiff has set forth no facts to demonstrate that Defendants engaged in any act of

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

22

oppression, surprise, or overly-harsh conduct in connection with the originating of the subject loans. Plaintiff argues that "Defendants intended to deceive [him] into believing that the 1% interest rate would be fixed for the life of the loan so they could close the deal and run off with his money." (Pl.'s Opp'n 11:15-17, Dkt. #13.)  However, as detailed above, the Adjustable Rate Rider attached to the DOT, which Plaintiff executed, clearly explains the terms of repayment.  And Plaintiff has a duty to read the terms of a contract before signing.  *Fields*, 163 Cal. App. 3d at 578; *see also Employee Painters' Trust*, 77 F.3d at 1192.

Moreover, the Court notes that the purpose of the loans was to refinance the Subject Property, which indicates that this is not the first loan that Plaintiff had taken out.  Given his prior experience with loan documents of this type, as well as the written terms of the adjustable rate rider that he executed, the Court finds that, if Defendants had attempted to defraud him (and the Court is making no such finding), Plaintiff should have been able to discover it at the time he executed the loan agreements.  Instead, his Complaint was not filed until nearly three-and-a-half years later. Plaintiff has had an opportunity to explain why equitable tolling applies, and the Court is not persuaded.  Hence, the Court DISMISSES his seventh, eighth, and ninth causes of action WITHOUT LEAVE TO AMEND.

8.   Plaintiff's Tenth Cause of Action for Violation of California Business & Professions Code Section 17200

In his next cause of action, Plaintiff alleges that Defendants violated California Business & Professions Code section 17200 by (1) misrepresenting and concealing the terms of his loans; (2) failing to comply with California Civil Code sections 2923.5 and 2924; and (3) conspiracy to defraud him to enter into and make payments under the subject loans.  (FAC ¶¶ 88-92, Dkt. #8.)

In their motion to dismiss, Defendants argue that Plaintiff lacks standing to assert a claim under section 17200.  Specifically, Defendants argue that standing to bring a section 17200 claim is limited to specified public officials and any person who has suffered injury in fact and has lost money or property as a result of unfair competition.  (Defs.' Mot. at 20:6-12, Dkt. #10.)  Defendants maintain that Plaintiff fails to allege that he lost money or property as a result of any purported

1    violation.  *Id.* at 20:19-20.

2         California Business & Professions Code section 17200 prohibits unfair competition

3    including any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

4    misleading advertising."  Because the statute is written in the disjunctive, it prohibits three separate

5    types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3)

6    fraudulent acts or practices.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180

7    (1999).  This statute has a "broad scope that allows for 'violations of other laws to be treated as

8    unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and

9    practices not specifically proscribed by any other law.'"  *Hauk v. JPMorgan Chase Bank USA*, 552

10   F.3d 1114, 1122 (9th Cir. 2009) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002)).  Thus,

11   violation of almost any federal, state or local law may serve as the basis for a section 17200 claim.

12   *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994).  In addition, a business practice

13   may be "unfair or fraudulent in violation of [section 17200] even if the practice does not violate any

14   law."  *Olszewski v. Scripps Health*, 30 Cal.4th 798, 827 (2003).

15        The definition of "unfair" acts or practices in consumer actions is uncertain.  There are two

16   opposing lines of California appellate court opinions.  *See, e.g., Morgan v. Harmonix Music Sys.,*

17   *Inc.*, 2009 WL 2031765, at *4 (N.D. Cal. July 7, 2009) (noting the split in authority); *Bardin v.*

18   *DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006) (same).  "One line defines 'unfair' as

19   prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to

20   consumers and requires the court to weigh the utility of the defendant's conduct against the gravity

21   of the harm to the alleged victim."  *Bardin*, 136 Cal. App. 4th at 1260 (internal citation omitted).

22   "The other line of cases holds that the public policy which is a predicate to a consumer unfair

23   competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional,

24   statutory, or regulatory provisions."  *Id.* at 1260-61 (internal citation omitted).

25        The term "fraudulent" as used in section 17200 "does not refer to the common law tort of

26   fraud" but only requires a showing that members of the public "are likely to be deceived."  *Puentes*

27   *v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008) (citing *Saunders v. Superior*

28

UNITED STATES DISTRICT COURT
For the Northern District of California

24

*Court*, 27 Cal. App. 4th 832, 839 (1994); *Byars v. SCME Mortgage Bankers, Inc.,* 09 Cal. App. 4th 1134, 1147 (2003)).  "Unless the challenged conduct 'targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.'"  *Id.* (quoting *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 806 (2006)).

As an initial matter, the Court rejects Defendants' argument that Plaintiff lacks standing to bring suit under section 17200.  A private person has standing to assert an unfair competition claim only if he or she "has suffered injury in fact" and "has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.  Accepting Plaintiff's allegations here as true, the Court finds that me meets this standard.  *See, e.g., Sullivan v. Wash. Mut. Bank, FA*, No. C-09-2161 EMC, 2009 WL 3458300, at *4-5 (N.D. Cal. Oct. 23, 2009) (concluding that the initiation of foreclosure proceedings put the plaintiff's interest in her property sufficiently in jeopardy to allege an injury under section 17200); *Rabb v. BNC Mortgage, Inc.*, CV 09-4790 AHM (RZx), 2009 WL 3045812, at *2 (C.D. Cal. Sept. 21, 2009) (same).

Nonetheless, the Court agrees that Plaintiff's claim must fail.  Plaintiff's first and third allegations are that Defendants misrepresented and concealed the terms of his loans, and that they conspired to defraud him to enter into and make payments under the loans.  However, as detailed above, the Adjustable Rate Rider attached to the DOT, which Plaintiff executed, clearly explains the terms of the loan and repayment.  (RJN, Ex. 1, Dkt. #11.)  The Rider indicates the interest rate of the Loan and when the monthly mortgage payments would change.  *Id.*  Specifically, it expressly states the interest rate and monthly payments, and categorizes such explanation into subheadings "Change Dates," "Calculation of Changes," "Limits of Interest Rate Changes," "Effective Date of Changes," and "Notice of Changes."  *Id.*  Plaintiff has presented no evidence to support the proposition that the terms of the Adjustable Rate Rider were hidden from him, that they were unusual or unfair, or harsh or one-sided, or that there was any impropriety in the formation or execution of the contract.  In addition, Plaintiff presumably received mortgage statements in connection with the subject loan and even admits that his loan adjusted annually.  (Pl.'s Opp'n 3:24-4:2, Dkt. #13.)  Further, Plaintiff has a duty to read the terms of a contract before signing.  *Fields*, 163 Cal. App. 3d at 578 (general duty

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

25

UNITED STATES DISTRICT COURT
For the Northern District of California

1   to read binds signing party to contract unless it contains unusual or unfair language, which the

2   preparing party must explain); *see also Employee Painters' Trust*, 77 F.3d at 1192 (party who signs

3   a written agreement even without reading it is bound by its terms).  Accordingly, these allegation are

4   without merit and must be dismissed

5       Plaintiff's second allegation is that Defendants failed to comply with California Civil Code

6   sections 2923.5 and 2924.  Once again, as discussed above, Plaintiff's claims under sections 2923.5

7   and 2924 are without merit.  Accordingly, this allegation must also be dismissed.  Based on this

8   analysis, the Court hereby GRANTS Defendants' motion to dismiss Plaintiff's tenth cause of action

9   WITHOUT LEAVE TO AMEND.

10          9.      Plaintiff's Eleventh Cause of Action for Quiet Title to Real Property

11      Plaintiff's eleventh cause of action is for quiet title under California Code of Civil Procedure

12   section 761.020.  Plaintiff alleges that he is the owner of the Subject Property and that "Defendants

13   are seeking to hold themselves out as the fee simple owners of the subject property, when in fact

14   they do not have possession and are not holders in due course of the Promissory Note or Deed of

15   Trust."  (FAC ¶ 97, Dkt. #8.)  Plaintiff seeks a judicial declaration that the title to the Subject

16   Property is vested in him alone and that Defendants be declared to have no estate, right, title, or

17   interest in it.  *Id.* at ¶ 98.

18      In their motion to dismiss, Defendants argue that Plaintiff fails to allege their adverse interest

19   because they have no recorded interest in the Subject Property.  (Defs.' Mot. 22:9-11, Dkt. #10.)  In

20   addition, Defendants argue that Plaintiff fails to allege the ground upon which this claim is based.

21   Specifically, Defendants maintain that Plaintiff sets forth no facts to demonstrate that the DOT is

22   cancellable, and that he fails to tender the amount due under the DOT in order to seek quiet title.

23      The purpose of a quiet title  action is "'to finally settle and determine, as between the parties,

24   all conflicting claims to the property in controversy, and to decree to each such interest or estate

25   therein as he may be entitled to.'"  *Newman v. Cornelius*, 3 Cal. App. 3d 279, 284 (1970) (quoting

26   *Peterson v. Gibbs*, 147 Cal. 1, 5 (1905)).  Quiet title claims are governed by section 761.020 of the

27   California Code of Civil Procedure, which provides that a complaint to quiet title "shall be verified,"

28

and requires it to include all of the following:

> (a) A description of the property that is the subject of the action. In the case of tangible personal property, the description shall include its usual location. In the case of real property, the description shall include both its legal description and its street address or common designation, if any.

> (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. If title is based upon adverse possession, the complaint shall allege the specific facts constituting the adverse possession.

> (c) The adverse claims to the title of the plaintiff against which a determination is sought.

> (d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought.

> (e) A prayer for the determination of the title of the plaintiff against the adverse claims.

Cal. Civ. Proc. Code § 761.020.

Here, Plaintiff cannot establish that he is entitled to quiet title. A basic requirement of an action to quiet title is an allegation that plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the deed of trust." *Kelley v. Mortgage Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009). Thus, it is dispositive as to this claim that, under California law, a borrower may not assert "quiet title" against a mortgagee without first paying the outstanding debt on the property. *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted); *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL 2757041, at *8 (N.D. Cal. July 9, 2010). As Plaintiff concedes that he has not paid the debt secured by the mortgage, he cannot sustain a quiet title action against Defendants. Accordingly, Plaintiff's eleventh cause of action for quiet title is DISMISSED WITHOUT LEAVE TO AMEND.

10.    Plaintiff's Twelfth Cause of Action for Declaratory and Injunctive Relief

Plaintiff's final cause of action is for declaratory and injunctive relief. Specifically, Plaintiff contends that Defendants are not authorized to proceed with foreclosure on the Subject Property because they are not the holders in due course of the promissory note at issue. (FAC ¶ 100, Dkt.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  #8.)  Plaintiff requests that the Court grant a preliminary injunction and temporary restraining order

2  as to any action to set the Subject Property for a non-judicial sale pursuant to foreclosure

3  proceedings, and grant a permanent injunction precluding Defendants from engaging in any

4  wrongful conduct in the future.  *Id.* at ¶ 104.

5  In their motion to dismiss, Defendants argue that Plaintiff cannot establish that he is entitled

6  to declaratory and injunctive relief.  (Defs.' Mot. 23:20-25:13, Dkt. #10.)  However, without

7  reaching the merits of Defendants' argument, the Court notes that declaratory and injunctive relief

8  are not causes of action; rather, they are remedies.  *McDowell v. Watson*, 59 Cal. App. 4th 1155,

9  1159, 69 Cal. Rptr. 2d 692 (1997) ("Injunctive relief is a remedy and not, in itself a cause of action")

10  (internal quotation marks omitted); *see also Kennedy Funding, Inc. v. Chapman*, 2010 WL 2528729,

11  at *11 (N.D. Cal. June 18, 2010).  Accordingly, Plaintiff's twelfth cause of action is more properly

12  considered a remedy and is therefore DISMISSED.  However, a dismissal of the twelfth claim will

13  not, in fact, preclude Plaintiff's ability to recover on these theories if he is able to show the existence

14  of the elements necessary to plead his remaining claims that would entitle him to such relief.

15  Moreover, dismissal of this claim at the pleading stage will serve the felicitous purpose of narrowing

16  the action, by eliminating superfluous or unnecessary claims and concentrating the parties' (and the

17  Court's) energies on the essence of the underlying dispute.  For this reason, Defendants' motion to

18  dismiss Plaintiff's twelfth cause of action will be granted with leave to amend to the extent that such

19  remedies can be included where appropriate in the prayer for relief section of any second amended

20  complaint.

21  **VI.  CONCLUSION**

22  For the reasons stated above, the Court hereby ORDERS as follows:

23  1)  Plaintiff's first cause of action for Wrongful Foreclosure is DISMISSED WITHOUT

24  LEAVE TO AMEND.

25  2)  Plaintiff's second cause of action for Rescission under 15 U.S.C. § 1635 is

26  DISMISSED WITHOUT LEAVE TO AMEND.

27  3)  Plaintiff's third cause of action for Reformation under California Civil Code sections

28

28

3399 and 1670.5 is DISMISSED WITHOUT LEAVE TO AMEND.

4)   Plaintiff's fourth cause of action for Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, et seq., is DISMISSED WITH LEAVE TO AMEND, but only as to loan servicers as defined in 12 U.S.C. § 2605(e).

5)   Plaintiff's fifth cause of action for Breach of the Implied Covenant of Good Faith and Fair Dealing is DISMISSED WITHOUT LEAVE TO AMEND.

6)   Plaintiff's sixth cause of action for Breach of Fiduciary Duty is DISMISSED WITHOUT LEAVE TO AMEND as to the moving Defendants.  However, as Defendant Capital Market Funding, Inc. has not appeared in this matter and did not join in Defendants' motion, Plaintiff's claim against it remains pending and may be included in any second amended complaint.  As there is no indication that CMF has been properly served, Plaintiff must ensure that any amended complaint that includes CMF as a defendant is properly served on it.

7)   Plaintiff's seventh cause of action for Fraudulent Misrepresentation is DISMISSED WITHOUT LEAVE TO AMEND.

8)   Plaintiff's eighth cause of action for Fraudulent Concealment is DISMISSED WITHOUT LEAVE TO AMEND.

9)   Plaintiff's ninth cause of action for Civil Conspiracy to Defraud is DISMISSED WITHOUT LEAVE TO AMEND.

10)  Plaintiff's tenth cause of action for Violation of California Business & Professions Code section 17200 is DISMISSED WITHOUT LEAVE TO AMEND.

11)  Plaintiff's eleventh cause of action for Quiet Title is DISMISSED WITHOUT LEAVE TO AMEND.

12)  Plaintiff's twelfth cause of action of Declaratory and Injunctive Relief is DISMISSED, but with leave to amend to the extent that such remedies can be included where appropriate in the prayer for relief section of any second amended complaint.

1    Plaintiff shall serve any file any amended complaint within 30 days of this Order.  Failure to
2    do so will result in dismissal of his case in its entirety.

3        **IT IS SO ORDERED.**

4

5    Dated: August 9, 2010                                        _____

6                                                                 Maria-Elena James
                                                                  Chief United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California